1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8   ALEXANDER HUNTER,                            No. C06-182P

9                        Plaintiff,              ORDER GRANTING IN PART
                                                 AND DENYING IN PART
10  v.                                           DEFENDANT'S MOTION FOR
                                                 SUMMARY JUDGMENT
11  AMERICAN WEST STEAMBOAT
    COMPANY, LLC,
12
13                       Defendant.

14

15          This matter comes before the Court on Defendant's motion for summary judgment.  (Dkt. No.

16  12).  Plaintiff has also filed a motion for leave to file a supplemental brief.  (Dkt. No. 18).  Having

17  considered the parties' briefing and the relevant documents presented, the Court GRANTS IN PART

18  and DENIES IN PART Defendant's motion for summary judgment.  The Court denies Defendant's

19  motion to the extent it concerns Plaintiff's maintenance and cure claims.  However, the Court grants

20  Defendant's motion to the extent it seeks dismissal of Plaintiff's claim under the Washington Law

21  Against Discrimination, Plaintiff's Jones Act claim, and Plaintiff's unseaworthiness claim.  Finally, the

22  Court GRANTS Plaintiff's motion for leave to file a supplemental brief.  The reasons for the Court's

23  order are set forth below.

24                                        **Background**

25          Plaintiff Alexander Hunter suffered a heart spasm on February 2, 2005 while working for

26  Defendant American West Steamboat Company, LLC.  Plaintiff was hospitalized for one week and

    released after he had a normal cardiogram, but Plaintiff continued to suffer cognitive problems.

ORDER - 1

1    Plaintiff's neurologist eventually declared Plaintiff fit to return to work on March 14, 2005, with no

2    restrictions.  Defendant contends that March 14, 2005 marks Plaintiff's maximum medical

3    improvement, ending any obligation by Defendant to pay maintenance and cure.

4         Plaintiff's cardiologists determined that because Plaintiff had a cardiac arrest, he should have a

5    defibrillator installed because he was at very high risk of a subsequent cardiac arrest.  Dr. Belz, the

6    cardiologist overseeing the implantation of the defibrillator, testified in his deposition that a

7    defibrillator is the usual routine care for those at high risk of subsequent cardiac arrest.  Dr. Belz also

8    testified that a defibrillator does not prevent dangerous heart rhythms, but treats them as they occur.

9    Dr. Belz explained that while the defibrillator would not treat a heart muscle dysfunction or weakness

10   from coronary spasm, and would not prevent the spasm, it would treat the dangerous heart rhythms

11   that occur due to a spasm.  The defibrillator was installed on April 4, 2005, and Dr. Belz cleared

12   Plaintiff to work on April 8, 2005.  Plaintiff contends the defibrillator treatment is curative, and that

13   therefore April 8, 2005 should mark Plaintiff's maximum medical improvement.

14        After Plaintiff suffered his heart spasm on February 2, 2005, Defendant discovered that

15   Plaintiff had not reported his heart condition on a pre-employment medical questionnaire, which

16   Plaintiff filled out on July 12, 2003.  Less than a year prior to July 12, 2003, Plaintiff had visited a

17   doctor about chest pains, was hospitalized after suffering a seizure and chest pain, and was prescribed

18   nitroglycerin and other medication after being diagnosed with a coronary artery spasm.  However,

19   Plaintiff had marked "No" on the medical questionnaire in response to the question "Have you ever

20   been treated for . . . Heart problems?" and did not include any mention of hospitalization for chest

21   pains or his diagnosis of a coronary artery spasm.  Defendant maintains that it refused to rehire

22   Plaintiff because it believed Plaintiff had lied on his medical questionnaire.  Defendant's Employment

23   Manual states that employee dishonesty subjects the employee to immediate dismissal.

24        Plaintiff's medical costs exceeded $98,000.  Plaintiff's wife's insurance covered a portion of

25   these costs.  Because Defendant believes Plaintiff fraudulently concealed his heart condition,

26   Defendant initially disputed its obligation to pay maintenance and cure.  However, Defendant admits

1   there is a question of fact regarding whether Plaintiff fraudulently concealed a relevant medical

2   condition and has since agreed to pay maintenance and cure through March 14, 2005 rather than

3   litigate the issue of fraudulent concealment.  However, Defendant maintains that it should not be

4   obliged to pay for costs covered by Plaintiff's spouse's insurance or for costs associated with

5   implanting the defibrillator.

6                                          **Analysis**

7           This matter is before the Court on Defendant's motion for summary judgment.  Summary

8   judgment is not warranted if a material issue of fact exists for trial.  <u>Warren v. City of Carlsbad</u>, 58

9   F.3d 439, 441 (9th Cir. 1995), <u>cert. denied</u>, 516 U.S. 1171 (1996).  The underlying facts are viewed

10  in the light most favorable to the party opposing the motion.  <u>Matsushita Elec. Indus. Co. v. Zenith</u>

11  <u>Radio Corp.</u>, 475 U.S. 574, 587 (1986).  "Summary judgment will not lie if . . . the evidence is such

12  that a reasonable jury could return a verdict for the nonmoving party."  <u>Anderson v. Liberty Lobby,</u>

13  <u>Inc.</u>, 477 U.S. 242, 248 (1986).  The party moving for summary judgment has the burden to show

14  initially the absence of a genuine issue concerning any material fact.  <u>Adickes v. S.H. Kress & Co.</u>,

15  398 U.S. 144, 159 (1970).  However, once the moving party has met its initial burden, the burden

16  shifts to the nonmoving party to establish the existence of an issue of fact regarding an element

17  essential to that party's case, and on which that party will bear the burden of proof at trial.  <u>Celotex</u>

18  <u>Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986).  To discharge this burden, the nonmoving party

19  cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for

20  trial.  <u>Id.</u> at 324.

21          In his complaint, Plaintiff brought a claim for negligence under the Jones Act, a claim for

22  violation of the Washington Law Against Discrimination ("WLAD"), and claims for unseaworthiness,

23  maintenance, cure, and wages under general admiralty and maritime law.  In response to Defendant's

24  motion for summary judgment, Plaintiff has withdrawn his negligence claim under the Jones Act and

25  his unseaworthiness claim.

26

ORDER - 3

**A.      Maintenance and Cure Issues**

Defendant has agreed to pay maintenance through March 12, 2005, and contends its obligation to pay maintenance ended on March 14, 2005, when Plaintiff's neurologist declared Plaintiff fit to return to work with no restrictions.[1]  Defendant has also agreed to reimburse Plaintiff some medical costs related to the treatment of his February 2, 2005 cardiac arrest.  However, Defendant has not agreed to cover medical costs paid by Plaintiff's spouse's health insurance or costs related to installation of the defibrillator.

**1.      Insurance Set-Off**

Defendant argues that to require it to pay medical costs already paid by Plaintiff's health insurer ignores the history of the doctrine of maintenance and cure and is contrary to the Ninth Circuit's decision in Gypsum Carrier, Inc. v. Handelsman, 307 F.2d 525 (9th Cir. 1962).  In Gypsum, the Ninth Circuit noted that:

> Maintenance and cure is based upon need.  It is not awarded if the seaman has received food and lodgings, and medical care, without expense or liability to himself, and the allowance will be reduced pro tanto to the extent that this is so . . . maintenance and cure is one of a number of private and public means directed to rescuing the injured seaman and making him whole . . . .  It is desirable that all be viewed as parts of an integrated system and applied in a way which will avoid disproportionate recoveries to particular individuals, whether high or low.

Id. at 535-36.  At issue in Gypsum was whether an award for maintenance and cure should be offset by disability unemployment benefits the employee received during the same period under the Unemployment Compensation Disability Act of California.  Id. at 535.  The Ninth Circuit noted that the disability unemployment payments the plaintiff received were not gratuitous because they originated in a fund created largely by contributions of the beneficiaries, and were "indistinguishable from benefits which might be received from disability insurance privately procured by the individual." Id. at 537.  The Ninth Circuit reasoned that 1) the non-gratuitous nature of the payments argued against permitting its use to reduce maintenance and cure, and 2) if maintenance and cure were

---

[1] The return to work slip states that Plaintiff was under neurologist's care through Friday, March 11, 2005. It declares Plaintiff able to return to work on Monday, March 14, 2005. (Mot., Ex. G)

1   reduced by state unemployment disability payments, an incentive would exist for employers to delay

2   payment of maintenance and cure to induce the seaman to look first to the state fund. Id. at 536-37.

3   Therefore, the court ultimately held that the defendant employer could not set off the disability

4   unemployment payments against maintenance and cure. Id. at 537.

5       The Fifth Circuit  in Gauthier v. Crosby Marine Service, Inc., 752 F.2d 1085, 1090 (5th Cir.

6   1985) followed the Ninth Circuit's decision in Gypsum.  At issue was whether the medical insurance

7   benefits used to pay the seaman's medical expenses should be set off from a maintenance and cure

8   award. Id. at 1089.  The Fifth Circuit noted that 1) the seaman alone paid the medical insurance

9   premiums, and 2) the policy to protect seamen would be hampered if a shipowner, in hopes of

10  reducing his liability, delayed maintenance and cure payments in order to force seamen to look first to

11  their private insurer. Id. at 1090.  The court thus held that where a seaman alone has purchased

12  medical insurance, the shipowner may not offset his maintenance and cure obligation with payments

13  the seaman receives from his insurer. Id.

14      Defendant points to a Third Circuit case in which the court used the seaman's medical

15  insurance benefits to offset the employer's maintenance and cure obligation. Shaw v. Ohio River Co.,

16  526 F.2d 193 (3d Cir. 1975).   The court first held that the disability benefits provided under the

17  employee's collective bargaining agreement should not offset the employer's maintenance and cure

18  obligation because the benefits were designed to replace lost wages rather than provide medical

19  treatment. Id. at 200.  However, the court held that the employee's medical insurance benefits should

20  offset the employer's maintenance and cure obligation because the insurance benefits provided the

21  functional equivalent of maintenance and cure and were not a substitute for lost wages. Id. at 201.

22      Defendant argues that the Ninth Circuit decision in Gypsum should not apply to this case

23  because Gypsum involves disability unemployment benefits, which it contends are a substitute for lost

24  wages like the disability benefits in Shaw.  However, the Ninth Circuit was more concerned with the

25  fact that the disability benefits were not "gratuitous." Gypsum, 307 F.2d at 537.  The decision in

26  Shaw is distinguishable because the employee in Shaw did not incur any expense or liability for

1   medical care - the medical benefits in <u>Shaw</u> were provided solely by the employer pursuant to a

2   collective bargaining agreement. <u>Shaw</u>, 526 F.2d at 200-01.

3       Here, Defendant has not shown that Plaintiff's health insurance benefits were provided

4   gratuitously.  The record instead suggests that Plaintiff's medical coverage was not gratuitous

5   because Plaintiff's spouse apparently purchased the medical insurance. (<u>See</u> Reply, Ex. A at 39) ("My

6   wife's policy covered me for less money. . . .").  That Plaintiff's spouse purchased the insurance is

7   irrelevant as it is Plaintiff's community property.  <u>See</u> <u>In re Diafos</u>, 110 Wn. App. 758, 766 (2002)

8   ("[A]ll property acquired during marriage is presumptively community property.").  Therefore,

9   Defendant's motion for summary judgment on this issue is denied.

10      **2.**      **<u>Defibrillator</u>**

11      Defendant also contends that it should not be obligated to cover the costs associated with the

12   implantation of the defibrillator because the defibrillator is not curative.  The general rule is that

13   maintenance and cure cannot be awarded beyond the time when maximum possible cure has been

14   effected and the seaman's physical condition has become fixed beyond further improvement. <u>Gypsum</u>,

15   307 F.2d at 532; <u>see also</u> <u>Calmar S.S. Corp., v. Taylor</u>, 303 U.S. 525, 530 (1938) ("We can find no

16   basis for saying that, if the disease is incurable, the duty extends beyond a fair time after the voyage in

17   which to effect such improvement in the seaman's condition as reasonably may be expected to result

18   from nursing, care, and medical treatment."); <u>Pelotto v. L & N Towing Co.</u>, 604 F.2d 396, 400 (5th

19   Cir. 1979) ("[W]here it appears that the seaman's condition is incurable, or that future treatment will

20   merely relieve pain and suffering but not otherwise improve the seaman's physical condition, it is

21   proper to declare that the point of maximum cure has been achieved.").

22      Defendant maintains that it is undisputed that Plaintiff's heart condition was pre-existing to his

23   employment and is incurable.  Defendant argues that Plaintiff's heart condition stabilized by the time

24   he had a normal cardiogram and was released from the hospital. <u>See</u> Reply, Ex. B (noting that on

25   March 9, 2005, Plaintiff's heart had regular rate and rhythm without murmur, rub, or gallop).

26   Plaintiff was declared fit to return to work with no restrictions on March 14, 2005.  Defendant argues

     that the defibrillator, although recommended by Dr. Belz, does not improve Plaintiff's heart spasm

ORDER - 6

condition.  The defibrillator only treats future cardiac arrests if they should occur; it does not prevent cardiac arrests or cure Plaintiff's heart spasm condition. See Motion, Ex I at 22 ("[I]t does not treat a heart muscle dysfunction or weakness from the spasm, doesn't prevent the spasm."); Id., Ex. C at 25 (Plaintiff testifying that he still had to take nitroglycerin twice a month for his heart spasms).

However, Dr. Belz also testified that since Plaintiff had suffered a cardiac arrest on the ship, he was thus at high risk for future arrests. (Resp., Ex. H at 8).  Dr. Belz testified that implanting a defibrillator was a routine treatment for this high risk condition. Id. Given Dr. Belz's testimony, it is arguable that a defibrillator would improve Plaintiff's high risk condition that resulted from his cardiac arrest.  Viewing Dr. Belz's testimony in the light most favorable to Plaintiff, there is sufficient evidence to create a genuine issue of material fact as to whether the costs of installing a defibrillator should be part of Plaintiff's maintenance and cure.  Therefore, Defendant's motion for summary judgment on this issue is denied.

### 3.      Plaintiff's Motion for Supplemental Briefing and Plaintiff's Insurer

Plaintiff has filed a motion for leave to file a supplemental brief to respond to two alleged misstatements in Defendant's reply brief.  The Court grants Plaintiff's motion.

Plaintiff's supplemental brief suggests that his insurer may be seeking reimbursement of medical costs it has paid.  In this situation, it is not clear as to who actually owns the claims for maintenance and cure with respect to the amounts paid by the insurer.  The parties should address this question in their trial briefs.

### B.      Claim Under the Washington Law Against Discrimination

Plaintiff alleges that Defendant violated the Washington Law Against Discrimination ("WLAD") by refusing to rehire him because of his underlying physical condition.  Under the WLAD, it is an unfair practice to refuse to hire or to discharge any person from employment based on a person's sensory, mental, or physical disability. RCW 49.60.180.  To prevail on a claim under this statute, Plaintiff must first establish the elements of a prima facie case: 1) that Plaintiff was disabled, 2) that Plaintiff was able to perform his job duties, 3) that Plaintiff was fired and not rehired and 4)

1    that he was replaced by someone who was not disabled. <u>Reihl v. Foodmaker, Inc.</u>, 152 Wn.2d 138,

2    150 (2004).

3         Defendant contends Plaintiff has not offered sufficient evidence that he is "disabled" under the

4    WLAD, and therefore has not established a prima facie case.  The Washington Supreme Court has

5    adopted the American with Disabilities Act ("ADA") definition of disabled for the purposes of the

6    WLAD.  <u>McClarty v. Totem Elec.</u>, 157 Wn.2d 214, 228 (2006).  A plaintiff "has a disability if he has

7    (1) a physical or mental impairment that substantially limits one or more of his major life activities, (2)

8    a record of such an impairment, or (3) is regarded as having such an impairment." <u>Id.</u>  "'[M]ajor life

9    activities' refers to those activities that are of central importance to daily life." <u>Toyota Motor Mfg.,</u>

10   <u>Ky., Inc. v. Williams</u>, 534 U.S. 184, 185 (2002).  Plaintiff does not respond to Defendant's

11   contention that Plaintiff is able perform every major life activity as his coronary spasm is controlled by

12   his medication and defibrillator.  However, Plaintiff alleges that he was "regarded as" having an

13   impairment by Defendant, and submits Defendant's Ninth Affirmative Defense in Defendant's Answer

14   as evidence: "Hunter is not fit to perform his previous job at American West because the magnetic

15   fields would interfere with the operation of his defibrillator putting his life at risk."(Dkt. No. 11 at 4).

16        Defendant contends that its affirmative defense does not indicate that it regarded Plaintiff as

17   disabled.  Defendant states it included the Ninth Affirmative defense as an after-acquired knowledge

18   defense to reduce damages, after learning during the course of litigation that Plaintiff's doctor would

19   not clear him to work in areas where loss of consciousness would create a risk of injury.  However,

20   Plaintiff need only demonstrate that he or she can produce evidence from which a rational trier could,

21   but not necessarily would, find that Plaintiff was regarded as disabled. <u>Parsons v. St. Joseph's Hosp.</u>

22   <u>and Health Care Ctr.</u>, 70 Wn. App. 804, 808 (1993).  To some extent, the affirmative defense may

23   suggest that Defendant believed Plaintiff could not work due to Plaintiff's defibrillator, and therefore

24   Plaintiff has offered sufficient evidence to support a prima facie case.

25        However, Plaintiff has not offered sufficient evidence that Defendant's nondiscriminatory

26   reason for not rehiring Plaintiff was a pretext for discrimination.  Once an employee establishes his

     prima facie case, the employer must produce evidence that the employment action was based on

ORDER - 8

legitimate, nondiscriminatory reasons. <u>Reihl</u>, 152 Wn.2d at 150.  Once the employer meets this

burden of production, the employee must produce evidence that the employer's stated reasons are

pretext for a discriminatory intent.  <u>Id.</u>  If there is no evidence of pretext, the defendant employer is

entitled to dismissal as a matter of law.  If there is evidence of pretext, the case must go to the jury.

<u>Kastanis v. Educ. Employees Credit Union</u>, 122 Wn.2d 483, 491 (1993).

   Defendant asserts that Plaintiff was not rehired because of his failure to disclose his prior heart

condition in his pre-employment medical questionnaire.  This is a legitimate, nondiscriminatory reason

for Defendant's action.  Defendant's employee handbook lists employee dishonesty, such as

misrepresentation on an application or other work records, as an unacceptable behavior which may

result in immediate dismissal without warning.  In addition, the medical questionnaire specifically

stated that misrepresentation or omission of facts would be cause for dismissal.

   As evidence of pretext, Plaintiff maintains that Defendant's human resources manager, Jana

Speck, did not know whether Plaintiff <u>intentionally</u> concealed his medical condition or <u>accidentally</u>

omitted that information. (Resp., Ex. G at 20-21).  However, Ms. Speck was not involved in the

decision not to rehire Plaintiff.  (Reply, Ex. E at 16, ll.18-25).  Furthermore, Plaintiff must provide

evidence that Defendant did not actually believe the stated reason for refusing to rehire him, not

whether the reasons given were objectively false.  "In judging whether [the employer's] proffered

justifications were 'false,' it is not important whether they were objectively false . . . courts 'only

require that an employer honestly believed its reason for its actions, even if its reason is foolish or

trivial or even baseless.'" <u>Villiarimo v. Aloha Island Air, Inc.</u>, 281 F.3d 1054, 1063 (9th Cir. 2002)

(quoting <u>Johnston v. Nordstrom, Inc.</u>, 260 F.3d 727, 733 (7th Cir. 2001)).  Therefore, whether or not

Ms. Speck objectively knew whether Plaintiff willfully concealed his medical condition is not

important.  The record shows that Vivien Westfall, who was involved in the decision not to rehire

Plaintiff, believed Plaintiff willfully concealed his medical condition. (Reply, Ex. D).  Plaintiff has not

provided any evidence suggesting that Defendant did not believe this reason.  Because Plaintiff has

not provided evidence that Defendant's stated reason is pretext for a discriminatory intent, Plaintiff's

WLAD claim is dismissed.

1

**Conclusion**

2          Consistent with the discussion above, the Court GRANTS IN PART AND DENIES IN

3   PART Defendant's motion for summary judgment.  The Court denies Defendant's motion with

4   respect to Plaintiff's claims for maintenance and cure.  However, the Court grants Defendant's

5   motion to the extent it seeks dismissal of Plaintiff's WLAD claim.  The Court also grants Defendant's

6   motion regarding Plaintiff's unseaworthiness and Jones Act claims, based on Plaintiff's withdrawal of

7   those claims.  Finally, the Court GRANTS Plaintiff's motion for leave to file supplemental briefing.

8          The clerk of the Court is directed to distribute this order to all counsel of record.

9          Dated this 21st day of March, 2007.

10

11                                          s/Marsha J. Pechman
                                            Marsha J. Pechman
12                                          United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26